UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.  Case No. 3:19-cr-268 (MPS)

TYSHAWN TURNER  May 19, 2021

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in connection with the sentencing of defendant Tyshawn Turner, following his guilty plea to a one-count indictment charging him with possessing firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). For the reasons that follow, the Government respectfully requests that the Court impose a sentence within the 24-to-30-month Guidelines range calculated by the parties.

### OFFENSE CONDUCT AND PROCEDURAL HISTORY

The Presentence Report ("PSR") accurately describes Mr. Turner's offense conduct. In short, on August 5, 2018, officers of the Hartford Police Department arrived on the scene of an illegal after-hours party at 15 Belden Street. *See* PSR ¶ 7. At that time, Mr. Turner was in a parking lot occupied by partygoers and their vehicles. He was with a friend who was carrying two loaded handguns and had been "show[ing] them off" to others. *See id.* ¶ 9. When the police arrived, the friend—who was on federal supervised release—panicked and asked Mr. Turner to take the guns.

Despite being a convicted felon—and thus prohibited from possessing firearms himself—Mr. Turner obliged. He hid both guns in a nearby BMW. Officers saw him and searched the car, finding both firearms inside. *See id.* ¶¶ 7–9.

- 1 -

Mr. Turner was arrested by state authorities that same day.  He was charged federally in January 2020, and in October 2020 he pled guilty to a one-count indictment charging him with unlawfully possessing firearms as a convicted felon.

The parties entered a written plea agreement that included a Guidelines stipulation.  The parties agreed that Mr. Turner's base offense level was 14 and that two levels should be added because one of the firearms he possessed was stolen.  *See* Dkt. No. 39-4 at 4; U.S.S.G. §§ 2K2.1(a)(6), 2K2.1(b)(4)(A).  A three-level reduction for acceptance of responsibility produced a total offense level of 13, which, in combination with Mr. Turner's placement in Criminal History Category IV, yielded a Guidelines range of 24 to 30 months' imprisonment.  *See* Dkt. No. 39-4 at 4–5.

After Mr. Turner's change of plea, the Probation Office filed the PSR.  The PSR uses a base offense level of 20, rather than 14, based on Mr. Turner's 2005 conviction for conspiracy to commit third-degree robbery, which the PSR deems a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A).  *See* PSR ¶ 16.  The calculation in the PSR otherwise tracks the parties', producing a total offense level of 19 and a Guidelines range of 46 to 57 months' imprisonment.  *See id.* ¶¶ 16–25, 67.

## DISCUSSION

Although the Supreme Court has held that the Guidelines are not mandatory, *see United States v. Booker*, 543 U.S. 220 (2005), it has also held that courts must "consult" the Guidelines and "take them into account" when fashioning a sentence.  *Id.* at 264.  A district court "should begin all sentencing proceedings by correctly calculating the Guidelines range," and that range is "the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).

After calculating the Guidelines, a court must consider the factors set out at 18 U.S.C. § 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); "the need for the sentence imposed" to further the four purposes of sentencing, *id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *id.* § 3553(a)(4); any pertinent policy statement by the Sentencing Commission, *id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).  The statute directs a court, having considered these factors, to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of federal criminal sentencing:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)   to afford adequate deterrence to criminal conduct;
>
> (C)   to protect the public from further crimes of the defendant; and
>
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2).

Courts may not presume that a Guidelines sentence is appropriate.  *Gall*, 552 U.S. at 50.  But at the same time, "[t]he fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."  *Id.* at 50 n.6.  After all, while the Guidelines are not binding, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical

evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46.

Here, the Court should apply a Guidelines range of 24 to 30 months' imprisonment—the range calculated by the parties in Mr. Turner's plea agreement. In the Government's view, a sentence within that range is sufficient, but not greater than necessary, to accomplish the purposes of federal sentencing.

### A. The Court should apply the Guidelines range calculated in the parties' plea agreement.

The PSR, unlike the plea agreement, treats Mr. Turner's conviction for conspiracy to commit third-degree robbery as a "crime of violence," resulting in a six-level increase to his base offense level. *See* PSR ¶ 68. Mr. Turner argues that his conviction does not qualify, a view that— as he explains—finds support in case law from this District. *See* Deft's Sentencing Mem. 5–6. Should the Court disagree, the Government respectfully requests that it depart from the higher range, and apply the 24-to-30-month range contemplated in the plea agreement, "in order to give effect to [the] plea bargain." *United States v. Fernandez*, 877 F.2d 1138, 1145 (2d Cir. 1989).

### B. A sentence within the range calculated by the parties is sufficient, but not greater than necessary, to accomplish the purposes of federal sentencing.

Mr. Turner's offense conduct is the latest in a long line of criminal behaviors that have risked harm to other members of his community. He merits a sentence within the parties' calculated range, primarily to provide just punishment for his serious offense, to protect the public, and to deter him from future crimes.

Start with Mr. Turner's offense conduct. Any § 922(g)(1) violation is serious by nature. "When a felon possesses a gun, the public is put at significant risk"—which explains why "Congress has enacted a specific criminal statute that provides serious penalties for such conduct."

*United States v. Sapp*, No. 02-cr-1065 (NGG), 2007 WL 1232073, at *3 (E.D.N.Y. Apr. 26, 2007); *see United States v. Handy*, No. 07-cr-906, 2008 WL 3049899, at *4 (E.D.N.Y. Aug. 4, 2008) (the seriousness of a § 922(g)(1) violation is "obvious").

The specifics of Mr. Turner's conduct raise additional red flags. Because of Mr. Turner's criminal history, he is forbidden from possessing firearms, full stop—he cannot even possess a gun, say, in his home. But his conduct on August 5, 2018 posed serious risks well beyond those entailed by simple possession of a firearm.

Mr. Turner's offense began with his decision to associate himself—in a public place—with a friend (also prohibited from carrying firearms) who was "show[ing] . . . off" two loaded guns. *See* PSR ¶ 9. That was a bad start. But things got worse when Mr. Turner agreed to handle and tried to conceal both guns in response to the arrival of police. As described in the PSR, the police responded to the scene because of an "illegal after-hours party." *See id.* ¶ 7. Other individuals were present in the parking lot, as were their vehicles. The PSR depicts an active scene, populated with multiple civilians and newly arrived police officers. In those circumstances, the sight of a person ducking into a car while armed with two handguns is liable to create trouble, and quickly. Had civilians or officers seen Mr. Turner and (quite reasonably) judged him a potential threat, the situation at 15 Belden Street could have escalated in a dangerous way. Mr. Turner's decisions that night reflected alarmingly poor judgment—the kind of poor judgment that can get people seriously hurt.

Mr. Turner's conduct is all the more concerning because it so nearly resembles his last weapons conviction (from 2013). In July of that year, Mr. Turner was arrested after discarding a handgun while fleeing from Hartford police officers. *See* PSR ¶ 36. In a post-arrest interview, he told officers that, while going to buy cigarettes with a friend, he had retrieved the friend's gun—

at his request—from its nearby public hiding place. *Id.* That conduct led to a five-year prison sentence from which Mr. Turner was released on December 29, 2017. *See id.* Despite that result, about seven months later, Mr. Turner was crouched in the BMW attempting to hide two firearms for a friend.

Other elements of Mr. Turner's record reinforce, rather than ease, the Government's concerns. In 2002, he was convicted of carrying a pistol without a permit and sentenced to one year in prison. *See id.* ¶ 31. Three years later, he was convicted of conspiracy to commit third-degree robbery after he and two confederates tried to take a delivery driver's money by pulling him out of his car. *See id.* ¶ 32. He was sentenced to five years in prison with eighteen months to serve and, after his release to probation, was returned to custody following multiple violations. *See id.* And in 2008, he was convicted of criminal weapon possession after he fled from Hartford officers through an apartment building and into a unit occupied by a woman and an infant, where he discarded a loaded .357 revolver. *See id.* ¶ 34. He was sentenced to 731 days in prison followed by 35 months of special parole. He was released to special parole but remanded after violations, ultimately discharging from a halfway house in January 2013—about six months before the July 2013 firearm offense described above. *See id.*

Put simply, Mr. Turner has repeatedly demonstrated his willingness to place other members of his community at risk through dangerous criminal conduct, including (on multiple occasions) carrying firearms in public. Prior sentences have not deterred him from reprising these behaviors. For those reasons, the goals of incapacitation and specific deterrence support a sentence within the range calculated by the parties.

Mr. Turner emphasizes that his conduct since his arrest in this case has been (aside from a January 2021 infraction for driving with a suspended license) satisfactory, and that, in particular,

he has been working consistently since October 2020.  *See* Deft's Sentencing Mem. 4–5.  That progress is to his credit and certainly bears on the sentencing determination.  Nonetheless, it represents a small slice of Mr. Turner's overall record and is drawn from a period during which he has had an unusually strong incentive to stay out of trouble (*i.e.*, the prospect of credit at sentencing).  In evaluating Mr. Turner's prospect of recidivism, the Government takes the view that his persistent pattern of criminal conduct throughout his adult life is a strong predictor of future behavior—more so than his behavior while on release in this case.

## CONCLUSION

The Government respectfully requests that the Court apply a Guidelines range of 24 to 30 months and impose a sentence within that range.

> Respectfully submitted,
>
> LEONARD C BOYLE
> ACTING UNITED STATES ATTORNEY
>
> /s/ Conor M. Reardon
> CONOR M. REARDON
> ASSISTANT U.S. ATTORNEY
> Federal Bar No. phv10431
> 157 Church Street, 25th Floor
> New Haven, CT 06510
> Tel.:   (203) 821-3700
> Email: conor.reardon@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on May 19, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

               <u>/s/ Conor M. Reardon</u>
               Conor M. Reardon
               ASSISTANT U.S. ATTORNEY
               Fed Bar No. phv10431
               157 Church Street, 25th Floor
               New Haven, CT 06510
               Tel: (203) 821-3700
               Fax: (203) 773-5378
               conor.reardon@usdoj.gov